UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOSEPH W., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00582-TAB-TWP |
| | ) | |
| KILOLO KIJAKAZI Acting Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON PLAINTIFF'S
BRIEF IN SUPPORT OF APPEAL**

**I.      Introduction**

Plaintiff Joseph W. appeals the Social Security Administration's denial of his application

for disability insurance benefits.  Plaintiff argues that the Administrative Law Judge failed to

adequately consider and offer good explanation for rejecting multiple opined limitations from his

own agency's reviewing psychologist.  In addition, Plaintiff claims that the ALJ erred in rejecting

Plaintiff's credibility regarding his allegation of disabling head trauma and pain.  As explained

below, Plaintiff persuasively demonstrates that the ALJ failed to construct a logical bridge

between the evidence of Plaintiff's March 2020 head MRI showing a brain bleed and the ALJ's

conclusion that Plaintiff's head trauma was not a medically determinable impairment, and that

Plaintiff would not need any additional limitations to account for it.  Additionally, remand is

necessary so the ALJ can clarify internal inconsistencies with the assessed limitations set forth

by reviewing psychologist Dr. Kenneth Neville.  Accordingly, Plaintiff's request for remand is

granted.  [Filing No. 13.]

## II.    Background

On August 22, 2019, Plaintiff protectively filed an application for supplemental security income, alleging disability beginning on that date.  The SSA denied Plaintiff's claims initially and upon reconsideration.  Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 22, 2019, the application date.  At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine; obstructive sleep apnea; hypertension; obesity; anxiety disorder; and borderline intellectual functioning.  [Filing No. 9-2, at ECF p. 18.]

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.  Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or his remaining ability to work despite his limitations.  The ALJ concluded that Plaintiff had the RFC to perform a light work as defined in 20 C.F.R. § 404.1567(b), but with the following limitations:

> [Plaintiff] can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs; he should avoid work involving extraordinary hazards, including unprotected heights, dangerous moving machinery, operation of a motion vehicle, and work around open flames or large bodies of water; he can occasionally balance, stoop, kneel, and crouch, but can never crawl or kneel; he should avoid work that requires rapid head or neck movements; he is limited to work with no more than occasional interaction with the public, co-workers, or supervisors; he is limited to work that does not require more than minimal workplace or routine changes, and should not involve production rate of pace work; and he is limited to work that does not involve reading or mathematics skills beyond the 4th grade level.

[Filing No. 9-2, at ECF p. 23.]  At step four, the ALJ concluded that Plaintiff had no past relevant work.  Finally, at step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including mail sorter, garment sorter, and packer.  [Filing No. 9-2, at ECF p. 30.]  Accordingly, the ALJ concluded that Plaintiff was not disabled.

## III.   Discussion

Plaintiff argues that the ALJ committed reversible error in (1) failing to adequately consider and offer a "good explanation" for rejecting multiple opined limitations offered by his own agency's reviewing psychologist; and (2) rejecting Plaintiff's credibility with regard to his allegation of disabling head trauma and pain.   The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence.  *See, e.g., Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence."  (Internal quotation marks omitted)).  In addition, the Court reviews "to determine whether [the ALJ's decision] reflects an adequate logical bridge from the evidence to the conclusions." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).  "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner.  Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

A.      **Plaintiff's subjective complaints of head trauma and pain**

Plaintiff claims that the ALJ was patently wrong to reject his allegations of debilitating head pain due to trauma. [Filing No. 13, at ECF p. 18.] In doing so, Plaintiff acknowledges the more deferential "patently wrong" standard the Court must apply when evaluating the ALJ's analysis of a Plaintiff's subjective symptom complaints. *See, e.g., Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022) ("As long as an ALJ gives specific reasons supported by the record, we will not overturn a credibility determination unless it is patently wrong.").

Plaintiff testified to experiencing right-side head pain for which he presented to the emergency room that felt like "somebody is in there with a screwdriver, trying to turn the screws, and it was so [excruciating]." [Filing No. 9-2, at ECF p. 60.] An MRI of Plaintiff's brain in March 2020 demonstrated chronic bleeding on Plaintiff's right temporal lobe, "nonspecific chronic petechial hemorrhage within the right temporal lobe." [Filing No. 9-26, at ECF p. 43.] In March 2021, Plaintiff described the pain to his neurologist consistent with his testimony. [Filing No. 9-64, at ECF p. 5.] The ALJ ultimately concluded that Plaintiff's diagnostic findings in the record were inconsistent with his allegations. [Filing No. 9-2, at ECF p. 24-26.] However, the ALJ never specifically mentioned the results of Plaintiff's March 2020 MRI—the discovery of a chronic right-sided bleed within the temporal lobe. In addition, Plaintiff claims that the ALJ rejected his allegations on an inaccurate basis—that Plaintiff's reports were ultimately inconsistent with each other and with diagnostic findings during the relevant period—citing to the ALJ's decision at Filing No. 9-2, at ECF p. 19.

The Commissioner argues that Plaintiff's argument is based on a false premise, because the ALJ did not reject his complaints of headaches, and the portion of the ALJ's decision that Plaintiff points to is just the ALJ's discussion of why he could not find Plaintiff's reported history

of a stroke and reported fall with head trauma to be medically determinable impairments.  [Filing No. 15, at ECF p. 9.]  The Commissioner goes on to argue that Plaintiff made no attempt to show how the evidence he relies on establishes a history of stroke or head trauma such that either constituted a medically determinable impairment.  [Filing No. 15, at ECF p. 10.]

In addition, the Commissioner maintains that at best, Plaintiff relies on his own lay-person logic to claim his 2020 MRI had significant findings, and that no medical source agreed with Plaintiff's interpretation.  [Filing No. 15, at ECF p. 10.]  For instance, the Commissioner notes that on reconsideration, state agency medical consultant B. Whitley, M.D., considered this MRI and characterized it as "unremarkable."  [Filing No. 9-3, at ECF p. 24-25.]  In addition, the Commissioner points out that Plaintiff went to see a neurologist for his reported headaches and memory loss, and his neurologist reviewed this MRI but made no connection between any findings on the MRI and Plaintiff's headaches, instead referring Plaintiff for physical therapy.  [Filing No. 9-26, at ECF p. 3-4.]

The Court agrees with the Commissioner in part.  The ALJ did not completely reject Plaintiff's complaints of headaches.  The ALJ's decision contains various references to Plaintiff's reported concerns of ongoing or intermittent headaches.  However, the ALJ did not specifically address the results of the March 2020 brain MRI, only stating that he had a scan.  [Filing No. 9-2, at ECF p. 25 ("Given his presentation, including no indications of focal neurological deficits, he was sent for a brain MRI for further evaluation.").]  Moreover, the ALJ did not address Dr. Whitley's statement that the MRI was unremarkable, which might have bolstered the ALJ's analysis.  Instead, the ALJ found Dr. Whitley's opinion unpersuasive.  [Filing No. 9-2, at ECF p. 28.]

Furthermore, in addressing the Commissioner's argument that Plaintiff relied on his own logic in his reply, Plaintiff's counsel concedes that he is not a physician and that he is using, in part, his own common sense, aided by a Google search, to argue that the MRI-confirmed brain bleed may have been consistent with Plaintiff's allegations of pain. [Filing No. 17, at ECF p. 2.] The Court need not wade too deep into this argument, because it is not the Court's role to re-weigh the evidence or make findings on behalf of the ALJ. *See, e.g., Burmester*, 920 F.3d at 510. However, there is no dispute that while the ALJ attempted to address the underlying subjective symptoms, he did not specifically address the March 2020 MRI or seek a medical opinion interpreting it. The ALJ's decision is devoid of the necessary level of articulation to demonstrate that the ALJ's reasoning constructed an accurate and logical bridge between this evidence and the ALJ's conclusion. *See, e.g., Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) ("[T]he ALJ must build an accurate and logical bridge from the evidence to her conclusion." (Internal citation and quotation marks omitted)).

Plaintiff raises additional concerns as well, noting that the Commissioner at least partly mischaracterizes the testimony of agency expert Dr. Lee Fischer as it related to the MRI of Plaintiff's brain. [Filing No. 17, at ECF p. 2.] The Commissioner claimed that Plaintiff's counsel specifically questioned Dr. Fischer about the brain MRI, and that Dr. Fischer admonished counsel that the MRI is only a picture of the brain and does not equate to functional limitations. [Filing No. 15, at ECF p. 12 (citing Filing No. 9-2, at ECF p .46-47).] However, this summary does not encompass the full testimony from Dr. Fischer in answering counsel's question that day. Dr. Fischer did not testify regarding Plaintiff's temporal bleed beyond answering "it's possible" that global atrophy of the brain could have functional limitations on a person's memory or short-term ability to concentrate. [Filing No. 9-2, at ECF p. 46.] Thus, while Dr. Fischer did make the

6

comment as noted by the Commissioner, the full context of the testimony indicates that he was answering a specific question about particular functional limitations, rather than discounting Plaintiff's complaints of pain.

Seventh Circuit case law states that the Court "will not remand a case to the ALJ for further specification where [the Court is] convinced that the ALJ will reach the same result." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). *See also Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) ("An error is harmless if, upon examination of the record, the court can predict with great confidence what the result of remand will be." (Internal citation and quotation marks omitted)). Ultimately, it is up to the ALJ on remand to address the full extent of the evidence in the record and assess whether additional limitations may (or may not) be necessary in light of the full evidence, including Plaintiff's March 2020 brain MRI. The Court simply does not have enough information to properly evaluate the ALJ's evaluation of this portion of Plaintiff's testimony and medical evidence. Moreover, Plaintiff sets forth a reasonable probability that the ALJ could have assessed a disabling amount of time off task to account for the occurrence of Plaintiff's head pain, or at least the possibility of a similar outcome with proper consideration of the overlooked MRI and related evidence. For these reasons, remand is appropriate.

**B.     Rejection of opined limitations offered by reviewing psychologist**

Plaintiff also argues that the ALJ erred when he failed to confront his implicit dismissal of the potentially disabling opinion from Dr. Kenneth Neville, a state agency psychologist. Dr. Neville assessed moderate "checkbox" limitations in Plaintiff's ability to "maintain attention and concentration for extended periods" and to "complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an

7

unreasonable number and length of rest periods." [Filing No. 13, at ECF p. 9.]  Additionally,
Plaintiff claims that the ALJ did not adequately explain his departure from Dr. Neville's narrative
opinion that Plaintiff could only "respond appropriately to brief supervision and interactions with
coworkers and work situations." [Filing No. 13, at ECF p. 9 (citing Filing No. 9-3, at ECF p.
14).]

Plaintiff argues that the ALJ's "unexplained and inherently erroneous rejections" of these
limitations were particularly harmful to Plaintiff given that the vocational expert testified that no
employer would tolerate time off task exceeding 10 percent of the workday or more than one
absence per month.  [Filing No. 9-2, at ECF p. 56.]  Furthermore, Plaintiff maintains that a
limitation to brief interactions with coworkers and supervisors would have been substantially
more limiting than the AJ's conclusion that Plaintiff could tolerate occasional interaction, or
roughly two hours in an eight-hour workday and could reasonably have been deemed work-
preclusive if presented to the VE.  [Filing No. 13, at ECF p. 9.]  Finally, Plaintiff claims that the
ALJ compounded his error when he failed to appropriately account for his own admission that
Plaintiff had moderate limitations in concentration, persistence, and pace in both the RFC
assessment as well as the step five hypothetical questions to the vocational expert.  [Filing No.
13, at ECF p. 15.]

The Commissioner disputes Plaintiff's claim that the ALJ erred in assessing Dr. Neville's
findings. [Filing No. 15, at ECF p. 12.]  Rather, the Commissioner argues that the ALJ complied
with the regulatory standards and his discussion and hypothetical question to the VE captured all
limitations supported by the record. [Filing No. 15, at ECF p. 12-13.]  The Commissioner
further argues that the ALJ properly relied on Dr. Neville's narrative because it adequately
translated the moderate checkbox ratings. *See, e.g., Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir.

2021) ("[T]he ALJ reasonably relied on the narrative RFC because it was in fact consistent with the 'moderate' checklist ratings.  The ALJ must consider whether the consultants' narrative RFC assessments adequately encapsulated and translated the checklist."  (Internal quotation marks and brackets omitted)).

Plaintiff calls out the Commissioner for raising contradictory arguments to address Plaintiff's concerns.  While the Commissioner first asserts that the ALJ could simply ignore the checkbox findings because she relied on the reviewing psychologist's narrative explanation, the Commissioner then reverses course in confronting Plaintiff's argument that the ALJ improperly rejected Dr. Neville's narrative limitation stating that Plaintiff could appropriately respond to only "brief supervision and interactions with coworkers and work situations."  [Filing No. 15, at ECF p. 18 ("As the ALJ made clear, he adopted the majority of Dr. Neville's narrative opinion, including limitations in the RFC corresponding to all of those opined by Dr. Neville with the sole exception being Dr. Neville's opined social limitations.  Significantly, Dr. Neville indicated in his checkbox form that Plaintiff did not have any social limitations—undermining Plaintiff's argument that the ALJ's rejection of that portion of Dr. Neville's opinion somehow means that the ALJ did not sufficiently consider the checkbox findings.").]  Thus, the Commissioner contends that because Dr. Neville did not check any boxes indicative of social limitations, the ALJ could not rely upon his narrative opinion of significant social limitations.

Plaintiff thoroughly articulates his exasperation with this contradictory argument by the Commissioner.  [See, e.g., Filing No. 17, at ECF p. 5 ("Allowing the ALJ to pick and choose which of the reviewing psychologist's opinions were actually intended and, therefore, worthy of consideration is a maddening standard for disability claimants to meet in proving mental health limitations.").]  Plaintiff argues that the Seventh Circuit has traditionally advocated in a more

holistic treatment of the checkbox and narrative potions of state agency psychologist's opinions.

*See, e.g., DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("[B]ut even if an ALJ may

rely on a narrative explanation, the ALJ still must adequately account for limitations identified

elsewhere in the record, including specific questions raised in check-box sections of standardized

forms[.]").  In addition, Plaintiff distinguishes the cases relied upon by the Commissioner.  *See,*

*e.g., Pytlewski v. Berryhill*, 791 Fed. App'x 611, 615 (7th Cir 2019) (The ALJ considered both

narrative and checkbox limitations, which explicitly concluded the claimant could "maintain

attention for two hours at a time and persist at simple tasks over eight- and forty-hour periods

with normal supervision[.]"); *Dudley v. Berryhill*, 773 Fed. App'x 838, 842-43 (7th Cir. 2019)

(affirmed because the plaintiff did not identify any limitations that the ALJ omitted).  Here,

Plaintiff explained that the ALJ made no mention of the checkbox limitations indicative of

Plaintiff needing time off task and maintaining a normal workday or workweek without

interruption, and the narrative opinion is not nearly as explicit as it was in *Pytlewski*.

       Finally, Plaintiff's reply brief carefully sets forth the various record evidence that

supported a need for breaks in concentration as suggested by Dr. Neville's opinion, including:

Plaintiff's nurse practitioner's observation of "cognition and memory impaired (forgetful, asks me

to repeat often)."; examining physician Dr. Jared Outcalt's observation that Plaintiff "appeared to

have difficulty completing calculations without assistance" and "general fund of knowledge

appeared inadequate"; and Plaintiff's treating neurologist opined "we suspect that he has low

premorbid intelligence" and diagnosed "memory impairment."  [Filing No. 17, at ECF p. 7.]

This evidence, as well as Dr. Neville's checkbox and narrative limitations, undermines the

Commissioner's contention that Plaintiff failed to identify any record evidence to support time

off task, absences, or additional pace restrictions.

In sum, the ALJ must clarify the internal inconsistencies within Dr. Neville's opinion and ensure that the assessed RFC encompasses all of Plaintiff's cognitive impairments.  Accordingly, remand is warranted.

**IV.     Conclusion**

Plaintiff demonstrates that the ALJ's decision lacks the necessary logical bridge between the evidence and the ALJ's conclusion, specifically as it relates to his March 2020 brain MRI, as well as the assessment of the checkbox and narrative limitations set forth by Dr. Neville. Therefore, Plaintiff's request for remand [Filing No. 13] is granted.

Date: 12/1/2022

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

11